**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY : <br> COMMISSION, : <br>     Plaintiff, : <br>  : <br> v.   : <br>  : <br> ENOCH PRATT FREE LIBRARY, et al. : <br>     Defendants. : | Case No. RDB-03-2727 |

**MEMORANDUM OPINION**

This is an age discrimination action filed by the Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), against the Mayor and City Council of Baltimore (collectively the "City")[1] and the Enoch Pratt Free Library ("Library") on behalf of Marion Hirsch, a sixty-nine year old former employee of the Library. The EEOC alleges that the Library and the City violated the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 626, *et seq.,* by

---

[1]On December 1, 2003, Defendants filed a Motion to Dismiss the City as a defendant in this action based upon the contention that the City was not Hirsch's employer. In opposition to that Motion, Plaintiff produced various documentary evidence and an affidavit suggesting that the City was either a joint employer of Hirsch or that the Library is an agent of the City. This Court denied that Defendants' Motion to Dismiss on May 11, 2004, finding Defendants' arguments premature. Defendants did not raise the issue of the City's liability until its final reply brief, wherein it argued that the City should be dismissed because Plaintiff has failed to adduce sufficient evidence of a joint employer relationship or of an agency relationship. Plaintiff has moved to strike Defendants' argument because the argument was not raised in the Defendants' Opposition or in its Cross Motion. However the Court need not reach Plaintiff's Motion because Defendants have failed to rebut, in any way, the evidence previously submitted by Plaintiff in opposition to Defendants' previous Motion to Dismiss. In addition, Defendants have presented no new authority to support its contention that the City is not liable. Accordingly, the City will remain a defendant in this case as it proceeds to trial. Because this Court has considered and rejected Defendants' arguments, Plaintiff's Motion to Strike is rendered moot. A separate Order will be issued to that effect.

terminating Ms. Hirsch on the basis of her age.

Before the Court is Plaintiff's Motion for Partial Summary Judgment[2] and Defendants' Cross Motion for Summary Judgment. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). As discussed below, both parties' Motions for Summary Judgment will be DENIED and this case will proceed to trial.

I. **Background**

Marion Hirsch is a 69 year-old female who has lived in Baltimore, Maryland since 1960. Hirsch received a bachelors' degree in fine arts from Syracuse University. After college, Hirsch spent her early adult years raising her three children and volunteering at various charity organizations. As her children left home, she devoted more time to her volunteer activities and began to volunteer at the Baltimore City Mayor's Office. From 1983 through 1985, Ms. Hirsch volunteered as an assistant to the mayor's aides. In that capacity, she handled the mail, researched constituent problems, and worked on various projects. For a short-time after she began volunteering with the Mayor's Office, Hirsch managed the downtown Baltimore campaign office for William Donald Schaefer's reelection campaign.

Hirsch's volunteer activities with the Mayor's Office led to a paid position as a program assistant with the City of Baltimore Commission on Aging. In that position, she recruited volunteers to visit 46 nursing homes throughout Baltimore City. Her recruitment included outreach at churches,

---

[2]Plaintiff's submissions are less than clear as to the precise issues on which Plaintiff seeks summary judgment. However, it appears that Plaintiff seeks judgment with regard to Defendants' liability for violating the ADEA.

neighborhood community groups, and corporations. Her program included approximately 300 volunteers. The position ended due to state funding cuts.

In December of 1992, Hirsch assumed the paid position of volunteer coordinator for the Library. She was 57 years old at the time. The volunteer coordinator was permitted to work between 19 and 21 hours per week. The position involved recruiting, screening and assigning volunteers throughout the library system. While in the position, Hirsch created a Volunteer Council, a group of volunteers which met quarterly to share information and assist in planning the annual volunteer appreciation luncheon. Hirsch also devised a record-keeping system to track volunteer hours.

Frustrated by her inability to perform all of the tasks demanded by the position in the time allotted, Hirsch set upon a campaign to make her position full time. In 1997, Hirsch sent a memo to the head of the Library's human resources office, Imelda Roberts, urging that the part-time volunteer coordinator position be converted to full time. (Pl.'s Mem. Supp. Summ. J. Ex. 5.) She later approached Roberts' successor, Russell Jolivet, regarding her request to make the position full time. (Jolivet Dep. at 46-47.) Hirsch also pressed the case for a full-time volunteer service coordinator with Director of Administrative Services Gordon Krabbe. (Krabbe Dep. at 32.) Based in part on Hirsch's insistence, Krabbe included the full-time volunteer services coordinator position in the requested 2003 budget.

In January of 2003, the Library's request to make the volunteer services coordinator position full time was approved. The job of full-time volunteer coordinator involved the same duties as the part-time position. (Krabbe Dep. at 46.) On January 13, 2003, the Library advertised the newly created full-time position internally and placed an advertisement in the *Baltimore Sun*. The "Basic

3

Requirements" listed on the announcement included:

> Bachelor's degree in Personnel Administration/Business Administration or a related field. Three to five years' experience in Volunteerism or Human Resources. Ability to work well with individuals and groups. Ability to communicate effectively both verbally and in writing. A working knowledge of public library operations and of the Baltimore community preferred.

(*Id.*)

Hirsch was disturbed that she was required to compete for the new full-time volunteer position which she had essentially created. Hirsch knew of other part-time employees whose jobs were converted to full-time positions without requiring the employee to reapply for the new position, and without opening the position to competition. For instance, Betty Jean Boulware was a part-time librarian who was placed in a full-time librarian position without reapplying for the position or being subjected to competition therefor. (Boulware Dep. at 15-16.) Library administrators acknowledge that there is no policy against such "conversions," and they acknowledge that it would have been within the Library Director's discretion to simply move Hirsch into the full-time position without requiring her to apply for the position. (Krabbe Dep. 57-58.)

After she was informed that she would have to compete for the full-time position, Hirsch approached Jolivet in February of 2003 with her concerns, and Jolivet assured her that she would prevail over an equally-qualified candidate by virtue of her tenure. (Hirsch Aff. ¶ 5.) At some point after the job announcement went out, a panel was convened to screen the candidates. Jolivet was the first member of the panel. When Betty Boulware, Chief of Neighborhood Services, became aware of the position she told Jolivet that she was unhappy with Hirsch, and that she wanted to participate in the

4

selection process. (Boulware Dep. 24, 45-46.) Thereafter, Jolivet appointed Boulware to the selection panel. The final panel member was Genevieve Mason, a Library volunteer. Mason initially resisted serving on the panel, instead sending a letter urging that Hirsch be continued in the volunteer coordinator position in a full-time capacity. (Pl.'s Mem. Supp. Summ. J. Ex.10; Mason Dep. 6, 12.)

Over fifty applications were received for the position. (Jolivet Dep. at 143.) The panel chose to interview between six and eight candidates, including Hirsch. The panelists each completed forms on which they rated each candidate based upon a series of criteria. (*See* (Pl.'s Mem. Supp. Summ. J. Ex.11(A)&(B).) Panelist Genevieve Mason rated Hirsch highly, and recommended that she remain in the position of Volunteer Services Coordinator. However, Panelist Betty Boulware rated Hirsch as lacking the skill necessary for the position and did not recommend Hirsch for eligibility for the position. (Pl.'s Mem. Supp. Summ. J. Ex.11(B)).

When the panelists' ratings were aggregated, Hirsch was ranked third. (Jolivet Dep. at 102.) A candidate by the name of Brian Higgins ranked first. (*Id.*) Ranked second was Summer Rosswog, a thirty-one year old woman, who was eventually selected to fill the position of volunteer coordinator. Higgins and Rosswog proceeded to a second round of interviews by Gordon Krabbe. Krabbe selected Ms. Rosswog. (Krabbe Dep. at 91.) Krabbe did not interview Higgins. (Krabbe Dep. at 93.) Both Higgins and Rosswog were also interviewed by Assistant Director of the Library Patricia Wallace. (Wallace Dep. at 42.) Wallace also recommended Rosswog as the best candidate for the position. (*Id.*)

Based upon the interviewers' recommendations, Summer Rosswog was eventually selected to fill the position of volunteer coordinator. Rosswog was previously fired from her position as the

5

volunteer coordinator for Baltimore Reads, while within the probationary period for that position. (Pl.'s Mem. Supp. Summ. J. Ex.10.) For two years prior to that, she worked part-time as a service learning coordinator and program assistant at University of Maryland Baltimore County ("UMBC"). (Pl.'s Mem. Supp. Summ. J. Ex.13.) Rosswog was Boulware's first choice for the position. ((Pl.'s Mem. Supp. Summ. J. Ex.14.) On the candidate recommendation form, Boulware indicated that Rosswog "[w]ould be an additional outreach arm for youth." (*Id.* at 0161.)

On April 24, 2003, one month after the interview, Russell Jolivet informed Hirsch that she was not selected for the volunteer coordinator position. Hirsch asserts that she reminded Jolivet that she was presumably more qualified for the position than any other candidate by virtue of her tenure. She claims that Jolivet replied, "[i]t has nothing to do with qualifications; it's personality." (Hirsch Dep. 101-102.) In June of 2003, Rosswog began the full-time job, as Hirsch prepared to depart. Defendants transferred Hirsch's work site to the Library's business office, where she spent her last few weeks. While working at the business office, Hirsch approached Gordon Krabbe to ask why she was losing her job. She claims that he replied "we want somebody who is going to be here a long time." (Hirsch Dep. at 146.) For his part, Krabbe denies making any such statement. (Krabbe Dep. at 120.)

Hirsch filed a charge of discrimination with the EEOC on May 23, 2003 alleging that she was fired from the Library based on her age. After conducting an investigation of the charges, the EEOC filed suit in this Court on September 24, 2003, seeking reinstatement for Ms. Hirsch and various other injunctive and compensatory relief.

6

**II.     Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson*, 477 U.S. at 248. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, "[w]hen the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)). Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment– even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("neither party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook v. United States,* 713 F.2d 662, 665 (11th Cir. 1983).

**III.    Analysis**

The Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 626, *et seq*., makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).   To establish that

8

the Defendants' termination of Hirsch in this case was based upon her age, Plaintiff may proceed in one of two ways.  First, Plaintiff may meet its burden "through evidence showing that age bias motivated the employment decision under the so-called 'mixed- motive' method . . . ."  Second, Plaintiff may establish discrimination "through circumstantial evidence of discrimination under the 'pretext' method established in *McDonnell Douglas Corp. v. Green* . . . and its progeny."  *Mereish v. Walker,* 359 F.3d 330, 334 (4th Cir. 2004).  In this case, Plaintiff has relied primarily on the second, pretext method of circumstantial proof.  Therefore, the Court analyzes that claim first and concludes with a discussion of Plaintiff's mixed-motive claim.

### A. **Circumstantial Evidence under *McDonnell Douglas***

To establish a claim based upon circumstantial evidence using the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case by demonstrating that: "(1) she is a member of the protected class; (2) she was qualified for the job and met the employer's legitimate expectations; (3) she was discharged despite his qualifications and performance; and (4) following her discharge, she was replaced by someone with comparable qualifications outside the protected class."  *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (*citing Blistein v. St. John's College,* 74 F.3d 1459, 1467-68 (4th Cir.1996)).  If Plaintiff is able to sufficiently satisfy each of the four prima facie elements, the defendant bears the burden of demonstrating a legitimate non-discriminatory explanation for the employment action.  *Mitchell*, 12 F.3d at 1314-15 (*citing St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993); *Fink v. Western Electric Co.,* 708 F.2d 909 (4th Cir.1983) (adopting the *McDonnell Douglas* scheme for use in ADEA cases)); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Once the defendant articulates such a  nondiscriminatory

9

explanation, "the presumption created by the prima facie case 'drops from the case,' and the plaintiff bears the ultimate burden to prove that the defendant intentionally discriminated against the plaintiff." *Id.*

### 1. Prima Facie Elements under *McDonnell Douglas*

Defendants do not dispute that Plaintiff can satisfy the first and third elements of the prima facie elements of an age discrimination action because Hirsch is over forty years old, and Hirsch was discharged from her position as a volunteer coordinator at the Library. (Def.'s Mem. Opp. Summ. J. at 6.) Additionally, Defendants do not challenge Plaintiff's ability to satisfy the fourth element, as they acknowledge that Hirsch was replaced by a much younger employee.[3] (*Id.*) Nonetheless, Defendants contend that Plaintiff is unable to satisfy the second element of the prima facie case because Hirsch was not qualified for the full-time position, and because Hirsch was not performing adequately in her position. As discussed below, there is a genuine issue of material fact to be resolved by a jury in this case, specifically, whether Hirsch was performing adequately in the position. The Motions for Summary Judgment of all parties must therefore be denied.

In support of their argument that Hirsch was not qualified for the full-time volunteer coordinator position, and that she was not performing adequately in the part-time position, Defendants offer a series of affidavits from Library employees citing specific instances in which Hirsch was unable to recruit volunteers. For instance, Library employee Ann Smith describes an instance where Hirsch refused to

---

[3] "[T]he fact that a replacement is substantially younger than the plaintiff is a . . . reliable indicator of discrimination." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

help recruit volunteers for a book fair.  (Ann Smith Aff. ¶ 7.)  Other affidavits are offered from Library superiors who level more general criticisms concerning Hirsch's inability to recruit volunteers, and her inability to work well with branch managers. (*See, e.g.,* Boulware Aff. ¶¶ 7-14 (noting Hirsch's "abrasive personality" and her failure to provide volunteers for library branches); Jolivet Aff. ¶¶ 5-8 (commenting on Hirsch's difficulty working with others and alleging that she did not meet volunteer recruiting targets); Krabbe Dep. at 80 (observing that Hirsch did not do enough volunteer outreach)).  Yet, as acknowledged by Hirsch's supervisor, none of the alleged deficiencies in Hirsch's performance were ever documented or otherwise formally raised with Hirsch.  (Jolivet Dep. at 64-65.)

First, Defendants' assertion that Hirsch was not qualified for the full-time volunteer coordinator position is simply not supported by the record.  It is undisputed that Hirsch served in the part-time position for ten years and that she was never reprimanded in any way for poor performance, or for any other reason.  (*See id.*)  Furthermore, following Hirsch's interview for the full-time position, her immediate supervisor, Russell Jolivet, remarked that she was "capable of performing this position and should be placed on the eligible list."  (Pl.'s Reply in Supp. Summ. J. Ex. 31.)  Jolivet has also stated that Hirsch "is of high integrity and assumes her responsibilities in a professional manner [and] . . . has considerable experience in [coordination of volunteer activities] as well as the ability to work with community groups."  (Pl.'s Reply in Supp. Summ. J. Ex. 32.)  Also worth noting is the fact the full-time volunteer coordinator position seemingly originated at Hirsch's behest, based upon her own perceptions as to the Library's needs.  In light of that fact, it is hard to fathom how she would not be qualified to effectuate what was largely her own plan for the expansion of the Library's volunteer recruitment program.

As to Defendants' second argument, however, there is a genuine issue of material fact as to whether Hirsch met the Library's expectations in her capacity as the part-time volunteer coordinator. Indeed, some of Defendants' own witnesses offered contradictory testimony in this regard. For instance, although Krabbe testified that Hirsch failed to adequately recruit volunteers, he also testified that she performed her job as a part-time volunteer coordinator adequately. (Krabbe Dep. at 80.) Krabbe's only complaint with Hirsch is that she failed to go beyond the status quo, and operated essentially in "maintenance mode." (*Id.*) However, the record suggests that Hirsch was limited in what she could do by virtue of her part-time status. What's more, Hirsch pushed for the full-time position precisely so that she would have more time to expand the Library's volunteer recruitment efforts. (*See* Pl.'s Reply in Supp. Summ. J. Ex. 29.) In addition, Plaintiff has presented testimonial evidence to rebut the specific complaints contained within various affidavits submitted by Defendants concerning Hirsch's day-to-day performance as a part-time volunteer coordinator. (*See generally* Hirsch Aff.) Based upon this conflicting evidence, there is a genuine issue of material fact which precludes summary judgment on Plaintiff's age discrimination claim.

**2.    Pretext Analysis under *McDonnell Douglas***

Alternatively, Defendants argue that they are entitled to summary judgment even if Plaintiff could meet the four prima facie elements under *McDonnell Douglas,* because Defendants have proffered legitimate, non-discriminatory, reasons for Hirsch's termination, and Plaintiff has failed to show that those reasons are pretextual. As the Fourth Circuit has recently noted, once a defendant has proffered a nondiscriminatory basis for the challenged employment action, the plaintiff can meet her "burden of proving pretext either by showing that [the defendant's] explanation is 'unworthy of

credence' or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." *Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir. 2004) (citing *Burdine,* 450 U.S. at 256; *Dugan v. Albemarle County Sch. Bd.,* 293 F.3d 716, 721 (4th Cir. 2002)).

In this case, Plaintiff has adequately rebutted Defendants' proffered justifications for Hirsch's termination. Defendants have proffered essentially two reasons for terminating Hirsch. First, Defendants contend that Hirsch was terminated because "[she] had difficulty communicating with the branch managements [*sic*] of the library." (Pl.'s Mem. Supp. Summ. J. Ex. 22 (Defendant's Answer to Interrogatory No. 3).) Secondly, Defendants contend that Hirsch was not selected for the full-time position because the candidate who was selected, Summer Rosswog, "has stronger volunteer outreach experience." (Pl.'s Mem. Supp. Summ. J. Ex. 22 (Defendant's Answer to Interrogatory No. 3).) As discussed below, Plaintiff has adduced sufficient evidence to raise a triable question as to whether these explanation are pretextual.

Defendants' primary contention is that Hirsch was not selected because of her poor job performance as a part-time volunteer coordinator. Yet, despite Defendants' employment policies mandating periodic performance reviews and requiring documentation of performance deficiencies (Pl.'s Mem. Supp. Summ. J. Ex. 15, 16, and 17), there is no evidence that Defendants ever did anything to correct the alleged deficiencies in Hirsch's performance prior to terminating her. The Fourth Circuit dealt with similar facts in the case of *E.E.O.C. v. Warfield-Rohr Casket Co., Inc.,* 364 F.3d 160, 165 (4th Cir. 2004). In that case, the defendant proffered that it had terminated its employee based in part on the employee's inability to get along with his coworkers. *Id.* However, the court noted, "although [the plaintiff] portrays [the employee's] inability to get along with his coworkers as a

13

serious problem that had existed for several years prior to his termination, the company apparently never took any significant action to address this problem before terminating [the employee]." *Id.* "Thus, despite evidence that [the employee] did not get along with his coworkers, a jury could reasonably conclude that [the defendant] would not have terminated [the employee] if his age had not been a factor." *Id.* Likewise, in this case, the fact that the Library made no effort to address the purported problems with Hirsch's performance could lead a reasonable fact-finder to the conclusion that Hirsch would not have been terminated but for her age. This is especially true in light of the Defendants' conflicting statements concerning Hirsch's performance, which are discussed in the preceding section. Accordingly, neither party is entitled to summary judgment on Plaintiff's claims.

The record is similarly muddled concerning Defendants' second proffered justification for Hirsch's termination–that Rosswog had more "volunteer outreach" experience than Hirsch.[4] Most of the deponents on whose testimony Defendants rely for this contention cite Rosswog's experience as a Service Learning Coordinator and Program Assistant for the University of Maryland Baltimore County as an example of her superior volunteer outreach experience. However, that job actually involved assisting a professor in placing 30 freshman and sophomore students in mandatory volunteer placements with public and nonprofit corporations. (Rosswog Dep. 88-89, 95-96.) Thus, the position required no "outreach" because the volunteer pool was defined by individuals who were required to

---

[4]Defendants also attempt to argue that Rosswog's qualifications were important in light of the additional duties required in the full-time position. However, this argument is contradicted by the fact that Hirsch, herself, was largely responsible for creating the full-time position. Moreover, Krabbe testified that the full-time job was identical to the part-time position save for the number of hours to perform it. (Krabbe Dep. at 46.)

14

perform their service. (*Id.*) In addition, Defendants note Rosswog's experience as a volunteer coordinator with Baltimore Reads. However, Defendants apparently failed to inquire as to why Rosswog was terminated less than ninety days after assuming that position. (Rosswog Dep. at 85.)

Defendants' reliance on Rosswog's superior experience is further undermined by numerous other conflicts between Rosswog's actual job experience, and the experience purportedly relied upon by the Library's deponents. For example, Jolivet was impressed by Rosswog's experience working with Baltimore City School children (Jolivet Dep. at 146-147), however, the children were in fact located in Salt Lake City, Utah. (Rosswog Dep. at 103.) In another instance, Betty Boulware cited Rosswog's work with volunteers in the ninth through twelfth grades performing literacy work as an example of her superior qualifications. (Boulware Dep. at 89.) However, Rosswog's work actually involved placing college students in mandatory service assignments in elementary schools, as literacy volunteers. (Rosswog Dep. at 101-102.) Taken together, these contradictions create real doubt as to whether Rosswog had superior volunteer outreach experience, and as to whether the Defendants relied upon that experience in selecting her over Hirsch. This doubt is amplified by the fact that there is no dispute that Hirsch had ten years of experience performing the actual job at issue, and that she had previous experience performing volunteer outreach with the City of Baltimore Commission on Aging and various other charitable and non-profit organizations. In light of these facts, a reasonable jury could conclude that Hirsch's age was the motivating factor in her termination and in Rosswog's selection. As such, summary judgment is not appropriate on Plaintiff's age discrimination claims. *See Warfield-Rohr Casket Co., Inc.,* 364 F.3d at 165.

### B.      Mixed Motive Analysis

Finally, the Court turns to the direct evidence offered by Plaintiff to establish that age played at least a central role in Defendants' decision to terminate her. Under the "mixed-motive" method of proof set forth by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (O'Connor, J., concurring), Plaintiff bears the initial burden of proving "through direct evidence that age was a substantial motivating fact in the [employment] decision." *Mereish*, 359 F.3d at 339 (citing 42 U.S.C. §§ 2000e-5(g)(2)(B)(*citing Price Waterhouse*, 490 at 258)).[5] Upon such a showing by Plaintiff, Defendant must prove that it would have made the same decision even absent its consideration of Plaintiff's age. *Id.* To demonstrate that age was a substantial motivating factor under the *Price Waterhouse* formulation, Plaintiff must show "(1) that [Hirsch] . . . is an employee covered by the ADEA; (2) that [Hirsch] . . . suffered an unfavorable employment action by an employer covered by the [A]ct; and (3) that this occurred under circumstances in which the employee's age was a determining factor, in the sense that but for the employee's age, the employee would not have suffered the adverse action." *Malina,* 18 F. Supp. 2d at 605 (*citing Tuck,* 973 F.2d at 374-75; *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548  (4th Cir. 1995) *rev'd on other grounds,* 517

---

[5]In the wake of *Price Waterhouse,* Congress enacted changes to Title VII, *inter alia,* allowing Title VII plaintiffs to demonstrate "mixed-motive" through circumstantial evidence. *Mereish*, 359 F.3d at 339 (citing 42 U.S.C. §§ 2000e-5(g)(2)(B). In *Mereish v. Walker*, the Fourth Circuit noted that it "had not occasion to decide whether the mixed-motive decision under the Civil Rights Act of 1991 applied to the ADEA," although the Fourth Circuit has expressed doubt that it does. *Id.* at 340 (*citing Hill v. Lockheed Martin Logistics Management, Inc.,* 354 F.3d 277, 285 n.2 (4th Cir. 2004); *see also EEOC v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 164 n.1 (4th Cir. 2004) (The Fourth Circuit has "previously assumed, without deciding, that direct evidence is still a prerequisite for a mixed-motive analysis in ADEA cases."). In this case, Plaintiff has proffered direct evidence in support of its mixed-motive claim. As such, the Court will proceed under the *Price Waterhouse* analysis.

U.S. 308 (1996)).  The first two elements are undisputed–Hirsch is in the protected age category, and she was terminated.  To satisfy the third element, Plaintiff must adduce "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Warfield-Rohr Casket Co., Inc.*, 364 F.3d at 163 (*quoting Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995), *abrogated by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003)).

Plaintiff offers three statements by Library officials which it claims evince a discriminatory attitude and bear upon the decision to terminate Hirsch:  (1) Gordon Krabbe's remark that "[w]e want somebody who is going to be here for a long time." (Hirsch Dep. at 104); (2) Betty Boulware's comment that Summer Rosswog was a superior candidate because she "would be an additional outreach arm for youth." (Pl.'s Mem. Supp. Summ. J. Ex. 14); and (3) Jolivet's statement that Rosswog was selected because she was "a person . . . with young people . . . the age group where [the Library] need[s] to do more in terms of trying to attract them for recruitment . . . and placement." (Jolivet Dep. at 126.)

Preliminarily, there is a factual dispute as to whether Gordon Krabbe ever made the first statement.  Hirsch has testified that he did (Hirsch Dep. at 104), whereas Krabbe denies that he ever made such a statement.  (Krabbe Dep. at 120.)  Such competing testimony creates a genuine issue of fact.  Moreover, the disputed fact is *material* in light of the Fourth Circuit's recent finding that an employer's statement that a much younger employee "'could give [the employer] more years' clearly reflects [the employer's] reliance on [the employee's] age as one of the reasons for his termination." *EEOC v. Warfield-Rohr Casket Co.,* 364 F.3d 160, 163 (4th Cir. 2004) (internal quotations

17

omitted). If credited by a jury, such a statement could be used to establish age discrimination under the mixed-motive method of proof. *See id.* Consequently, based upon this dispute alone, both parties' Motions for Summary Judgment must be denied. *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Defendants do not dispute that Boulware and Jolivet made the remaining two statements, however, Defendants contend that the statements are unrelated to the decision to terminate Hirsch, and that they do not sufficiently evince a discriminatory attitude. Indeed, all statements about age do not automatically carry animus. "[S]tatements about age, unlike statements about race or gender, do not rest on a we/they dichotomy and therefore do not create the same inference of animus" because everyone expects to someday grow old. *Dockins v. Benchmark Communications*, 176 F.3d 745, 749 (4th Cir. 1999); *see also EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir. 1992) (holding an employer's comment that the employer needed to "attract newer, younger people" and needed "young blood" failed to establish direct evidence of age discrimination); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (statement by employee in charge of lay-off decision that "there comes a time when we have to make way for younger people" in and of itself creates no inference of age bias, but merely "reflects no more than a fact of life and as such is merely a truism that carries with it no disparaging undertones.") (citation omitted). In *O'Connor* the Fourth Circuit held that a statement made directly to the plaintiff, two weeks prior to his discharge, that "O'Connor, you are too damn old for this kind of work" alone did not meet the requisite nexus between the statement and the alleged discriminatory employment action. *O'Connor*, 56 F.3d at 549.

"[I]solated and ambiguous statements . . . are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Id.* at 548-49 (citations omitted).

In light of these standards, the statements of Boulware and Jolivet implying that Rosswog would be better at recruiting youth because she is young are not, standing alone, sufficient to establish a mixed-motive claim. However, these comments are relevant to this Court's analysis of Plaintiff's claim under the *McDonnell Douglas* formulation. In that regard, the statements directly concerned the Library's reasoning in choosing Summer Rosswog, a thirty-one year old, over Hirsch despite the fact that Hirsch has significantly more experience working with youth than Rosswog. Combined with the other circumstantial evidence adduced by Plaintiff, the comments could support an inference of age discrimination. *See, e.g., E.E.O.C. v. Regency Windsor Management Co.,* 862 F.Supp. 189, 192 (W.D. Mich. 1994) (holding that comments "that younger people should be working as leasing agents".... "to attract the yuppie' clientele" in the Battle Creek area supported inference of discrimination). Nonetheless, such an inference is for the jury, and therefore provides no basis upon which summary judgment may be granted.

In sum, there are genuine issues of material fact with regard to Plaintiff's age discrimination claim which preclude summary judgment. Accordingly, both parties' Motions will be denied, and the case will proceed to trial.

## IV.      CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Paper No. 21) is DENIED, and Defendants' Cross Motion for Summary Judgment (Paper No. 28) is DENIED.  A separate Order will follow.


Date:  July 19, 2005

/s/
_____
Richard D. Bennett
United States District Judge